| UNITED STATES BANKRUPTCY COURT    Southern District of New York | PROOF OF CLAIM |
|---|---|

| Name of Debtor:<br>Daisy Laborde | Case Number:<br>09-24191 |
|---|---|

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

| Name of Creditor (the person or other entity to whom the debtor owes money or property):<br>Home Loan Services, Inc. as servicer for PNC Bank National Association sucessor by merger to National City Bank | ❏ Check this box to indicate that this claim amends a previously filed claim. |
|---|---|
| Name and address where notices should be sent:<br><br>Home Loan Services, Inc.<br>150 Allegheny Center Mall<br>Pittsburgh, PA 15212<br><br>Telephone number: | **Court Claim Number:**_____<br>(*If known*)<br><br>Filed on:_____ |
| Name and address where payment should be sent (if different from above):<br><br>Home Loan Services, Inc.<br>150 Allegheny Center Mall<br>Pittsburgh, PA 15212<br><br>Telephone number: | ❏ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.<br><br>❏ Check this box if you are the debtor or trustee in this case. |

| **1. Amount of Claim as of Date Case Filed:**        $                    55,958.64<br><br>If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.<br><br>If all or part of your claim is entitled to priority, complete item 5.<br><br>☑ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges. | **5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**<br><br>Specify the priority of the claim.<br><br>❏ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B). |
|---|---|

| **2. Basis for Claim:** Money Loaned<br>(See instruction #2 on reverse side.) | ❏ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4). |
|---|---|
| **3. Last four digits of any number by which creditor identifies debtor:** 6592<br><br>        **3a. Debtor may have scheduled account as:**_____<br>        (See instruction #3a on reverse side.) | |
| **4. Secured Claim (See instruction #4 on reverse side.)**<br>Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.<br><br>**Nature of property or right of setoff:**  ☑Real Estate    ❏Motor Vehicle    ❏Other<br>**Describe:**<br><br>**Value of Property:**$_____  **Annual Interest Rate**_____%<br><br>**Amount of arrearage and other charges as of time case filed included in secured claim,**<br><br>**if any:** $      2,535.20      **Basis for perfection:**  Mortgage<br><br>**Amount of Secured Claim:** $      55,958.64      **Amount Unsecured:** $_____ | ❏ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).<br><br>❏ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).<br><br>❏ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8). |

| **6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. | ❏ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(__). |
|---|---|
| **7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (*See instruction 7 and definition of "redacted" on reverse side.*)<br><br>DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.<br><br>If the documents are not available, please explain: | **Amount entitled to priority:**<br><br>$_____<br><br>*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.* |

| Date:<br>01/21/2010 | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.<br><br>Randa R, Simmons, Esq. | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

Daisy Laborde
Case No.   09-24191
Loan No.   ******6592

TOTAL AMOUNT OF DEBT

|  |  |  |  |
|---|---|---|---|
| Principal Balance | | $ | 53,701.91 |
| Accrued Interest | Interest at  5.999% | | 2,084.73 |
| Accrued Late Charges | | | 112.00 |
| Property Inspections | | | 60.00 |
| | | | |
| TOTAL | | $ | 55,958.64 |

PRE-PETITION ARREARS

|  |  |  |
|---|---|---|
| 7    Payments at   $337.60 | | 2,363.20 |
| (May 1, 2009-November 1, 2009) | | |
| Accrued Late Charges | | 112.00 |
| Property Inspections | | 60.00 |
| | | |
| TOTAL | $ | 2,535.20 |

***This proof of claim is filed without waiving any and all rights the
   Secured Creditor may have under 11 U.S.C. Section 362, if applicable.

CERTIFIED TO BE
A TRUE AND CORRECT COPY
OF THE ORIGINAL

**National City** ®

## NOTE AND SECURITY AGREEMENT

(Not to be Used for Texas Homestead Loans Unless Proceeds Used Only for Purchase Money or Refinance of Purchase Money)

National City Complete Loan is a registered trademark of National City Corporation.

Date: September 28, 2005

**1. DEBTOR (S):** ROBERT HAUGHTON, DAISY LABORDE

**Address:**  532 ROCHESTER LOOP
DAVENPORT, FL 33897

**2.  DEFINITIONS AND GENERAL TERMS.** "You" or "your" means the undersigned Debtors. "We", "our" or "us" means NATIONWIDE  A DIVISION OF NAT. CITY BANK OF IN, 2150 NORTH FIRST STREET, SAN JOSE, California  95131, and its successors and assigns. "Note" means this promissory note and all related attachments and addenda. "Loan" means the loan evidenced by this Note. "Property" means the real estate securing the payment of this Note described in Section 4. "Disclosure Statement" means the separate federal truth-in-lending disclosure statement of even date provided to you, the terms of which are incorporated by reference in this Note. Disclosures in the Disclosure Statement are contract terms. You agree that we are making this Loan directly to you. The Section headings of this Note are a table of contents and not contract terms.

**3.  PROMISSORY NOTE.** For value received, you, intending to be legally bound, jointly and severally promise to pay to our order the principal sum of $ 53,600.00          , which includes a prepaid finance charge of $  144.66          , plus interest on the principal sum outstanding and other sums owed under this Note until paid in full at the per annum rate of 9.9990 %. You will make a monthly payment in the amount of U.S.$470.34          on the   1st      day of each month beginning on          November  1, 2005          . If on          October  1, 2025          , you still owe amounts under this Note, you will pay those amounts in full on that date. You agree that all past due and unpaid charges owed, including past due interest, may be capitalized and earn interest by adding such charges to the principal balance of this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before principal. You will mail your monthly payments to: National City Home Loan Services, 150 Allegheny Center Mall, Pittsburgh, PA  16212, or such other place as we may specify. If you are making a payment by an overnight delivery service only, you will send it to National City, 5101 Interchange Way, Louisville, KY 40229 or such other place as we may specify.

**4.     PROPERTY:** 532 ROCHESTER LOOP
DAVENPORT, FL 33897

**5.  DISBURSEMENT OF PROCEEDS.** You authorize us to disburse all proceeds of this Loan by check, draft, electronic transfer or in such other form or manner as we choose in our sole discretion.

**6.  LATE CHARGE; RETURNED INSTRUMENT CHARGE; DEFFERAL CHARGE; SERVICE CHARGES.**  If all or any portion of any monthly payment is not received within 10 days after it is due and we do not accelerate the entire balance owing under this Note, you agree to pay a late charge.  This late charge will be $16.00.  If any check, draft, negotiable order of withdrawal, or other similar instrument is returned to us unpaid for any reason, you agree to pay a returned instrument charge of $20.  If we, in our sole discretion, permit you to defer any payment(s) you agree to pay a deferral charge for each payment deferred. We will continue to earn interest on the unpaid principal balance. If you request copies of any documents related to this Loan, you agree to pay a document request charge for the service of providing copies. This document request charge will be 96 per copy.  We will not charge you for documents we are required to provide you by law. You agree that we may also charge you a fee, not otherwise enumerated herein, for services that we perform for you that you have requested.

**7.  INSURANCE.**  You are required to insure the Property until this Loan is paid in full or we sell the Property.  You have the risk of loss of the Property and shall be responsible for its loss or damage.  You will notify us promptly of any loss or damage to the Property.  **You agree to obtain primary insurance coverage (including furnishing existing coverage) from any insurer you want that is acceptable to us provided that the insurer is authorized to do business in the state or jurisdiction where the Property is located or is an eligible surplus lines carrier, in the following types and amounts with us listed as loss payee: (a) fire, "all risk" perils and flood insurance required by law; and (b) all other insurance required by applicable law.**  You must keep the Property fully insured against loss or damage on terms which are acceptable to us to the extent permitted by law.  All insurance proceeds we receive (including a refund  of premium) may at our option reduce the indebtedness of this Note or be used to repair or replace the Property.  If the Property is destroyed, you must still pay us whatever you owe under this Note.  If you fail to maintain the required insurance, we may at our sole option obtain coverages at your expense that we believe are necessary to protect our interests in the Property.  You agree to pay the expense of such insurance on demand or agree that we may add such expense to this Loan.  You acknowledge that insurance we purchase may cost substantially more than insurance you could purchase.  Failure of your insurer to pay a claim, or any part of a claim, will mean you do not have the insurance required by this Note.  You also assign to us any other insurance proceeds related to the Note or our interest in the Property.  You must promptly provide us with evidence of insurance and proof of payment of insurance premiums upon our request, and all policies must provide us with a minimum of 10 days prior notice of cancellation or material change in coverage. You irrevocably authorize us as your agent and on your behalf, which authorization will survive your incompetence, to negotiate, settle and release any claim under your insurance or under any insurance with a third party insurer related to the Property, and to receive and sign all related papers and documents on your behalf including, checks, drafts and other items payable to you.

**8.  PREPAYMENT.**  You may voluntarily prepay the principal sum of this Note in part at any time.  If you voluntarily prepay the principal sum of this Note in full within the first     24     months of this Note, you agree to pay a voluntary prepayment charge. This voluntary prepayment charge will be equal to     2% of the principal balance at the time of prepayment. The prepayment charge will apply to amounts prepaid within 60 days of prepayment in full, after deducting any required refund.  Unless refund of all or a portion of the prepaid finance charge is required by law, no portion of the prepaid finance charge described in Section 3 will be refunded.  Subject to Section 3, you authorize us to apply all prepaid sums to the indebtedness of this Note in any manner we elect.

**9.  SECURITY AGREEMENT.**  To the extent permitted by law, you grant us a security interest and waive all applicable property exemptions and homestead rights (unless the Property is located in Texas) in the following property to secure performance of your obligations under this Note: (a) the Property including all equipment, parts, accessories and personal property which is a fixture of the Property except "household goods" as defined by 12 C.F.R. 227.12(d) unless purchased with the proceeds of this Loan.  If we have a prior lien on your principal residence as security for future obligations, we waive such security as to this Note only; (b) proceeds and unearned premiums of any Property insurance; and (c) the substitutions, replacements, products and proceeds of the foregoing. Our security interest will be a purchase money security interest if any of the foregoing are purchased with the proceeds of this Loan. You agree that we are not a fiduciary with respect to our security interest.  You further agree that we may at any time apply proceeds and unearned premiums and refunds of any Property insurance to reduce the indebtedness of this Note, even if you are not in default.  Upon our request, you will deliver any  documents that are necessary for us to perfect our security interest or, if applicable, follow our instructions to perfect our security interest in the Property. You will defend at your expense our security interest in the Property.  To the extent permitted by law, you agree to pay all actual costs imposed to release our interests in the Property.

**10.  PROPERTY MAINTENANCE AND USE.**  You will promptly pay all fees, fines, and taxes related to this Loan and the Property. You will maintain the Property in good condition except for ordinary wear and tear, and keep it free from all liens, encumbrances, fines and adverse claims except for those permitted by us in writing.  You will make all needed repairs.  You will not make any changes to the Property that will decrease its value or decrease its functionality without our prior written consent.   You will permit us to inspect the Property at a time which is reasonably convenient.  If you do not do any of the foregoing, we may do so at our sole option and add the costs to this Loan or require you to provide us with additional collateral.  You will not use, or permit others to use, the Property: (a) in violation of any law; (b) contrary to the provisions of any insurance policies covering the Property or in a manner that would invalidate any warranty or (c) for any business, commercial or agricultural purpose unless this Loan is explicitly for such a purpose.

**11. DEFAULT AND REMEDIES.** You will be in default under this Note if: (a) you fail to make any payment or pay other amounts owing under this Note when due; (b) you fail to keep any of your agreements under this Note or under any other agreement with us; (c) a bankruptcy petition is filed by or against you; (d) you have provided false or misleading information to us; (e) you die or are declared incompetent or incapacitated; (f) the Property is destroyed, determined by us to be uninsurable for use, seized, impounded or threatened with, or subject to, levy, attachment, condemnation, forfeiture or other administrative or judicial proceedings; or (g) you are in default on any obligation that is secured by a lien on the Property. If you are in default, in addition to any other rights and remedies we have under law and subject to any right you may have to cure your default, we may do any of the following: (aa) accelerate the entire balance owing under this Note after any demand or notice which is required by law, which entire balance will be immediately due and payable. If you are in default, prior to our obtaining a judgment against you, any amounts owing under this Note will continue to bear interest at the interest rate stated in this Note. If we obtain a judgment against you for any amounts owing under this Note, the amount of such judgment will bear interest at the rate permitted by Indiana law for judgments from the date of judgment; (bb) demand that you vacate the Property and make it available to us at a time that is reasonably convenient. You agree to comply with such demand; (cc) sell, lease, or otherwise dispose of the Property without prior demand, unless otherwise required by law. Our disposal of the Property will not release you from any of your obligations and you will pay us any balance owing under this Note; and (dd) recover all expenses related to retaking, holding, preparing for sale and selling the Property and reasonable collection costs, attorneys' fees (unless you are a resident of New Hampshire, in which case we may not recover our attorneys' fees from you) and legal expenses as permitted by 11 U.S.C. 508 and applicable state law.

**12. PROPERTY CONDITION.** You agree that with respect to any Property: (a) it is free from all material defects, in proper operating order and fit for all intended purposes; (b) that our making this Loan was based in part upon the value and condition of the Property as represented by you; (c) we did not directly or indirectly offer, sell or provide it to you; and (d) we are not a seller, supplier, merchant or warrantor. Accordingly, except for specific rights afforded by state law, any claims relating to the Property, including any defect or warranty related to it, are not our responsibility.

**13. ADDITIONAL AGREEMENTS.** You agree that: (a) you may not sell or assign this Note, the Property or any of its benefits or obligations without our prior written consent. We own this Note and may assign this Note or any of its benefits or obligations at any time without your consent; (b) this Note is between you and us and, except for successors or assigns as provided by this Note, this Note will not confer any rights upon any third party; (c) our rights and remedies in this Note are not exclusive; (d) we may waive or delay the enforcement of our rights under this Note without waiving or otherwise affecting such rights; (e) the provisions of this Note are only to the extent permitted by applicable law. Any part of this Note that cannot be enforced will be void, but the remaining parts will remain in effect; (f) you waive notice of dishonor, protest, presentment, demand for payment (subject to any right you may have to cure your default), waiver, delay and all other notices or demands in connection with this Note; (g) you waive all defenses relating to impairment of recourse or collateral, and we can change any term of this Note, release any collateral or release any obligor by agreeing with any one party without notifying or releasing any other party; (h) we can correct errors in this Note as provided in 15 U.S.C. Section 1640 upon notice to you even if such errors are contract terms and you agree to be bound by such corrections. Upon our request, you will promptly re-execute this Note to correct errors in this Note. You can change any term of this Note only in a writing signed by us; (i) the Bank is a national bank located in Indiana and your application for this Loan and the making of this Loan occurred in Indiana. Therefore, this Note shall be governed by and construed in accordance with (y) Federal laws and regulations including but not limited to 12 USC Section 85 and (z) the laws of Indiana, to the extent Indiana laws are not preempted by federal laws or regulations, and without regard to conflict of law principles; (j) this Note describes all agreements between you and us with respect to the Loan and there are no other agreements. An electronic or optically imaged reproduction of this Note or any other document related to your Loan constitutes an original document and may be relied on in full by all parties to the same extent as an original; (k) except as otherwise required by law, we are authorized to mail any notice or other correspondence to you by first class mail to your last known address indicated on our records; (l) you will provide us with 10 days prior written notice of any change in any information contained in your application including a change in your name or address. Except as otherwise specified, all notices and payments to us must be sent to National City, 150 Allegheny Center Mall, Pittsburgh, PA 15212 Attn: Customer Service, Locator 47-23-551, or such other place as we may designate. Our failure or delay in providing you coupon books, billing statements or other payment instructions will not relieve you of your obligations under this Note; (m) all payments must be in lawful money of the United States; (n) if you are a natural person you are competent to enter into this Note and if you are other than a natural person, the person signing on behalf of you represents that he is authorized to enter into and execute this Note; (o) we will not be responsible for any personal items in or on vacated Property. We will make a reasonable effort to return such items to you or have you reclaim them from us provided you notify us within 5 business days of our taking repossession and itemize such items. Even if you notify us, you abandon to us any personal items not reclaimed from us within 10 business days of our taking repossession; (p) we may accept late payments or partial payments without losing any of our rights if your payment is marked with the words "Paid in Full" or similar language, you must send your payment to National City, 150 Allegheny Center Mall, Pittsburgh, PA 15212 Att'n: Customer Service, Locator 47-23-551 or such other place as we may designate. If your payment is made to any other address, we may accept the payment without losing any of our rights; (q) our application of your payments or other proceeds is reasonable unless another method is required by law, in which case that method shall be reasonable; (r) this Note will be binding and inure to the benefit of you and us and our respective successors and assigns; (s) except as otherwise prohibited by law, Bank may provide to others, including, but not limited to, consumer credit reporting agencies, information about our transactions and experiences with you. Also, Bank and its affiliates (collectively "National City") may share with each other all information about you that National City has or may obtain for the purposes, among other things, of evaluating credit applications or offering you products or services that National City believes may be of interest to you. Under the Fair Credit Reporting Act there is certain credit information that cannot be shared about you (unless you are a business) if you tell National City by writing to National City Corporation, Attention: Office of Consumer Privacy, P.O. Box 4068, Kalamazoo, MI 49009. You must include your name, address, account number and social security number; (t) if this Loan is not for a consumer purpose or you are not a natural person, you are not entitled to any rights afforded consumers under applicable laws or regulations; (u) all actions under this Note requiring our consent are at our sole discretion, and such consent may be withheld for any reason; (v) the annual IRS Form 1098 will be issued only to the first borrower listed on this Note at origination and the designation of a borrower as first cannot be changed subsequently; (w) our typewritten name in Section 2 will constitute our signature for purposes of this Note; (x) we have an established business relationship with you, and unless otherwise prohibited by law, National City may contact you to offer you products and services that National City thinks may be of interest to you. Such contacts are not unsolicited and National City may contact you with an automated dialing and announcing device or by fax, email or other form of electronic communication and we may monitor telephone calls with you to assure quality service; (y) all amounts owed under this Note shall be without relief from valuation and appraisement laws; (z) we are authorized to sign on your behalf any document required to enforce our interests under this Note; (aa) disclosures included in this Note but not required by law are not an admission or waiver of rights by us; (bb) you will pay all fees we charge you in connection with this Loan including those indicated on any Good Faith Estimate or HUD1/HUD1A provided in connection with this Loan, which will be nonrefundable to the extent permitted by law; and (cc) in this Note, the term "affiliates" means current and future affiliates of National City Bank of Indiana, including, but not limited to, the following National City Corporation subsidiaries: National City Bank, National City Bank of Michigan/Illinois, National City Bank of Pennsylvania, National City Bank of Southern Indiana, National City Home Loan Services, Inc., First Franklin Financial Corporation, National City Bank of Kentucky, Madison Bank and Trust Company, National City Mortgage Co. and National City Mortgage Services Co.

**14. ADDITIONAL NOTICES.** The following notices are given by Bank only to the extent not inconsistent with 12 U.S.C. Section 85 and related regulations and opinions, and/or the choice of law provision set forth herein (with respect to which Bank expressly reserves all rights). You acknowledge receipt of the following notices before becoming obligated. For purposes of the immediately following *Notice to Cosigner*, "bank" means us.

## NOTICE TO COSIGNER

You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility. You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount. The bank can collect this debt from you without first trying to collect from the borrower (and after proper notice to you if you are a "cosigner" as defined by Illinois or Michigan law). The bank can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages (unless you receive wages in North Carolina, Pennsylvania, South Carolina or Texas) etc. If this debt is ever in default, that fact may become a part of your credit record. This notice is not the contract that makes you liable for the debt.

## NOTICE TO ALL SIGNERS

You are hereby notified that a negative credit report reflecting on your credit record may be submitted to a consumer (credit) reporting agency if you fail to fulfill the terms of your credit obligations.  I  f you believe that we have information about you that is inaccurate or that we have reported or may report to a credit reporting agency information about you that is inaccurate, please notify us of the specific information that you believe is inaccurate by writing to National City, 150 Allegheny Center Mall, Pittsburgh, PA  15212 Att'n: Customer Service, Locator 47-23-551 or such other place as we may designate.

## OTHER NOTICES

If the Property is located in California: Lender, may at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property.

If the Property is located in Colorado:  The dollar amount of the finance charge disclosed to you for this credit transaction is based upon your payments being received by us on the date payments are due. If your payments are received after the due date, even if received before the date a late fee applies, you may owe additional and substantial money at the end of the credit transaction and there may be little or no reduction of principal.  This is due to the accrual of daily interest until a payment is received.

If the Property is located in Florida: FLORIDA DOCUMENTARY STAMP TAX IN THE AMOUNT REQUIRED BY LAW HAS BEEN PAID OR WILL BE PAID DIRECTLY TO THE DEPARTMENT OF REVENUE, AND FLORIDA DOCUMENTARY STAMPS HAVE BEEN PLACED ON THE TAXABLE INSTRUMENTS AS REQUIRED BY CHAPTER 201, FLORIDA STATUTES.

If the Property is located in Iowa (this is a consumer credit transaction) or Kansas: NOTICE TO CONSUMER: 1. Do not sign this paper (agreement) before you read it. 2. You are entitled to a copy of this paper (agreement). 3. You may prepay the unpaid balance at any time and may be entitled to receive a refund of unearned charges in accordance with law. 4. If you prepay the unpaid balance, you may have to pay a prepayment penalty.

If the Property is located in Iowa and the principal amount of this Loan exceeds $20,000: IMPORTANT:  READ BEFORE SIGNING.  THE TERMS OF THIS AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE.  NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED.  YOU MAY CHANGE THE TERMS OF THIS AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT.

If the Property is located in Maryland: We elect Subtitle 10, Credit Grantor Closed End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland.

If the Property is located in Minnesota:  If the amount of this Loan is $100,000 or more, we elect Minn. Stat. § 334.01.

If the Property is located in Missouri: Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable.  To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

If the Property is located in New York: YOU SHOULD CHECK WITH YOUR LEGAL ADVISOR AND WITH OTHER MORTGAGE LIEN HOLDERS AS TO WHETHER ANY PRIOR LIENS CONTAIN ACCELERATION CLAUSES WHICH WOULD BE ACTIVATED BY A JUNIOR ENCUMBRANCE.

DEFAULT IN THE PAYMENT OF THIS LOAN AGREEMENT MAY RESULT IN THE LOSS OF THE PROPERTY SECURING THE LOAN.  UNDER FEDERAL LAW, YOU MAY HAVE THE RIGHT TO CANCEL THIS AGREEMENT. IF YOU HAVE THIS RIGHT, THE CREDITOR IS REQUIRED TO PROVIDE YOU WITH A SEPARATE WRITTEN NOTICE SPECIFYING THE CIRCUMSTANCES AND TIMES UNDER WHICH YOU CAN EXERCISE THIS RIGHT.

If the Property is located in North Dakota: THIS OBLIGATION MAY BE THE BASIS FOR A PERSONAL ACTION AGAINST THE PROMISOR OR PROMISORS IN ADDITION TO OTHER REMEDIES ALLOWED BY LAW.

If the Property is located in Oregon: NOTICE TO THE BORROWER: Do not sign this loan agreement before you read it.  The loan agreement provides for the payment of a penalty if you wish to repay the loan prior to the date provided for repayment in the loan agreement.

If the Property is located in Texas:   THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.  THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

If the Property is located in Vermont: NOTICE TO CO-SIGNER:  YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN.  IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.

If you reside in Wisconsin: NOTICE TO CUSTOMER: (a) DO NOT SIGN THIS BEFORE YOU READ THE WRITING ON THE REVERSE SIDE, EVEN IF OTHERWISE ADVISED. (b) DO NOT SIGN THIS IF IT CONTAINS ANY BLANK SPACES. (c) YOU ARE ENTITLED TO AN EXACT COPY OF ANY AGREEMENT YOU SIGN. (d) YOU HAVE THE RIGHT AT ANY TIME TO PAY IN ADVANCE THE UNPAID BALANCE DUE UNDER THIS AGREEMENT AND YOU MAY BE ENTITLED TO A PARTIAL REFUND OF THE FINANCE CHARGE.

**15.** **SIGNATURES.** YOU HAVE READ AND AGREE TO ALL PROVISIONS OF THIS NOTE INCLUDING THOSE ON PAGES 1 THROUGH 3 AND IN THE DISCLOSURE STATEMENT WHICH ARE INCORPORATED HEREIN BY REFERENCE. (1) DO NOT SIGN THIS NOTE BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES TO BE FILLED IN. (2) YOU ARE ENTITLED TO A COMPLETELY FILLED-IN COPY OF THIS NOTE BEFORE YOU SIGN IT. BY SIGNING THIS NOTE, YOU ACKNOWLEDGE THAT YOU HAVE RECEIVED AND HAD AN OPPORTUNITY TO REVIEW A COMPLETED COPY OF THIS ENTIRE NOTE BEFORE SIGNING IT ON THE DATE SHOWN ON PAGE 1. SEE PAGES 1, 2 AND 3 AND THE DISCLOSURE STATEMENT FOR ADDITIONAL IMPORTANT TERMS AND CONDITIONS.

| Debtor: | ROBERT HAUGHTON | | X_____ |
| | Type or print name of Debtor | | Debtor's signature |
| Debtor: | DAISY LABORDE | | X_____ |
| | Type or print name of Debtor | | Debtor's signature |
| Debtor: | _____ | | X_____ |
| | Type or print name of Debtor | | Debtor's signature |
| Debtor: | _____ | | X_____ |
| | Type or print name of Debtor | | Debtor's signature |
| Debtor: | _____ | | X_____ |
| | Type or print name of Debtor | | Debtor's signature |
| Debtor: | _____ | | X_____ |
| | Type or print name of Debtor | | Debtor's signature |

**FOR MICHIGAN GUARANTORS ONLY: Guaranty Agreement.** For value received, you, the undersigned guarantors, jointly, severally and unconditionally guarantee the payment of all sums owing under this Note when due and the performance by the Debtors of all promises contained in this Note. Upon default, we may proceed against any of you without first proceeding against any Debtor. The liability of each of you will be primary and will not be affected by any settlement, release, extension, renewal or modification of this Note whether or not by operation of law. Each of you voluntarily and knowingly waives all rights to any demands, presentments, notices and defenses of any kind or nature you might have in connection with this Guaranty. Each of you agrees to pay all expenses including reasonable attorneys' fees incurred by us if we have to enforce this Guaranty. Each of you acknowledges that you have read and agree to all terms of this Guaranty, Note and Disclosure Statement prior to signing below.

| Guarantor: | _____ | | X_____ |
| | Type or print name of Guarantor | | Guarantor's signature |
| Guarantor: | _____ | | X_____ |
| | Type or print name of Guarantor | | Guarantor's signature |

**FOR LOUISIANA PROPERTIES ONLY:**

"NEVARIETUR" for identification with an Act of Mortgage passed before me this _____ day of _____ .

_____
Notary Public:
Notary Identification Number

© 2004 National City Corporation

National City ®

# BALLOON NOTE ADDENDUM TO NOTE AND SECURITY AGREEMENT – NATIONPOINT

Date: September 28, 2005

**1. DEBTOR (S):** ROBERT HAUGHTON, DAISY LABORDE

**Property Address:** 532 ROCHESTER LOOP
DAVENPORT, FL 33897

**2. DEFINED TERMS; ADDENDUM A PART OF THE NOTE.** "Addendum" means this Balloon Note Addendum to Note and Security Agreement which is attached to, made a part of and amends and supplements the Note and Security Agreement ("Note") dated the same date as this Addendum. The terms "we" and "us" include our successors and assigns. In the event there are any conflicts between this Addendum and the Note, the provisions of the Addendum will control. Unless specifically defined in this Addendum, any capitalized terms shall have the same meaning as in the Note.

**3. BALLOON NOTE.** The final payment due under the Note is larger than the previous monthly payments. The final payment includes a substantial payment of principal. This Note is commonly called a "balloon note."

**4. BALLOON NOTE AGREEMENT.** You understand and agree as follows:

THIS LOAN IS PAYABLE IN FULL ON THE FINAL PAYMENT DATE SET FORTH IN THE PAYMENT SCHEDULE IN THE DISCLOSURE STATEMENT. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN, UNPAID INTEREST AND OTHER SUMS THEN DUE.

**5. SIGNATURES.** YOU HAVE READ AND AGREE TO ALL PROVISIONS OF THIS ADDENDUM AND AGREE THAT ALL NOTICES IN SECTION 15 OF THE NOTE ARE INCORPORATED HEREIN BY REFERENCE. (1) DO NOT SIGN THIS ADDENDUM BEFORE YOU READ IT OR IF IT CONTAINS ANY BLANK SPACES TO BE FILLED IN. (2) YOU ARE ENTITLED TO A COMPLETELY FILLED-IN COPY OF THIS ADDENDUM BEFORE YOU SIGN IT. BY SIGNING THIS ADDENDUM, YOU ACKNOWLEDGE THAT YOU HAVE RECEIVED AND HAD AN OPPORTUNITY TO REVIEW A COMPLETED COPY OF THE ENTIRE NOTE INCLUDING THIS ADDENDUM BEFORE SIGNING.

| Debtor: | ROBERT HAUGHTON | X |
|---|---|---|
| | Type or print name of Debtor | Debtor's signature |
| Debtor: | DAISY LABORDE | X |
| | Type or print name of Debtor | Debtor's signature |
| Debtor: | | X |
| | Type or print name of Debtor | Debtor's signature |
| Debtor: | | X |
| | Type or print name of Debtor | Debtor's signature |
| Debtor: | | X |
| | Type or print name of Debtor | Debtor's signature |
| Debtor: | | X |
| | Type or print name of Debtor | Debtor's signature |

© 2004 National City Corporation



PREPARED BY:

Name: CYNTHIA ARREOLA

Address: NATIONPOINT
25530 COMMERCENTRE DRIVE, LAKE
FOREST, CA 92630

Return to: NATIONPOINT
c/o SECURITY CONNECTIONS
1935 INTERNATIONAL WAY
IDAHO FALLS, ID 83402

STEWART TITLE FOUR CORNERS
1428 SUNRISE PLAZA
CLERMONT, FL 34714

INSTR # 2005248819
BK 06438 PGS 1792-1802 PG(s)11
RECORDED 10/12/2005 11:08:11 AM
RICHARD M WEISS, CLERK OF COURT
POLK COUNTY
MTG DOC 187.60
INTANG TAX 107.20
RECORDING FEES 95.00
RECORDED BY B Morris

———— [Space Above This Line For Recording Data] ————

# MORTGAGE

THIS MORTGAGE is made this 28th day of September 2005 , between the Mortgagor, ROBERT HAUGHTON and DAISY LABORDE , AS JOIT TENANTS WITH RIGHTS OF SURVIVORSHIP

(herein "Borrower"),

and the Mortgagee, NATIONPOINT A DIVISION OF NAT CITY BANK OF IN

a corporation organized and existing under the laws of United States of America , whose address is 2150 NORTH FIRST STREET, SAN JOSE, California 95131

(herein "Lender").

WHEREAS, Borrower is indebted to Lender in the principal sum of U.S. $ 53,600.00 , which indebtedness is evidenced by Borrower's note dated September 28, 2005 and extensions and renewals thereof (herein "Note"), providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on October 01, 2025 .

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon; the payment of all other sums, with the interest thereon, advanced in accordance herewith to protect the security of this Mortgage; and the performance of the covenants and agreements of Borrower herein contained, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the County of POLK

, State of Florida:

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS IN EXHIBIT "A":

SEE BALLOON RIDER ATTACHED HERETO AND MADE A PART HEREOF.
SEE PLANNED UNIT DEVELOPMENT RIDER ATTACHED HERETO AND MADE A PART HEREOF.

FLORIDA SECOND MORTGAGE

ITEM 4605L1 (0107) MFFL3117          (Page 1 of 6 pages)

GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131



which has the address of                   **532 ROCHESTER LOOP**

                                                            [Street]

              **DAVENPORT**        , Florida      **33897**      (herein "Property Address").
              [City]                             [Zip Code]

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property."

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1.    Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

**2.    Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Mortgage and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a Federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Mortgage that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Mortgage.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Mortgage, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Mortgage.

**3.    Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

**4.    Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other

**FLORIDA SECOND MORTGAGE**

charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Mortgage.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Mortgage, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note, (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage, (b) is not personally liable on the Note or under this Mortgage, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify,

FLORIDA SECOND MORTGAGE

forbear, or make any other accommodations with regard to the terms of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of Federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation hereof.

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Mortgage. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Mortgage.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Mortgage. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Mortgage without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Acceleration; Remedies. Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding, and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense of Borrower to acceleration and foreclosure. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. Lender shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorneys' fees, court costs, and costs of documentary evidence, abstracts and title reports.**

**18. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Mortgage due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to entry of a judgment enforcing this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees and court costs; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such

FLORIDA SECOND MORTGAGE

payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**19. Assignment of Rents; Appointment of Receiver.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender shall be entitled to have a receiver appointed by a court to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by the receiver shall be applied first to payment of the costs of management of the Property and collections of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Mortgage. The receiver shall be liable to account only for those rents actually received.

**20. Release.** Upon payment of all sums secured by this Mortgage, Lender shall release this Mortgage without charge to Borrower. Borrower shall pay all costs of recordation, if any.

**21. Attorneys' Fees.** As used in this Mortgage and in the Note, "attorneys' fees" shall include attorneys' fees, if any, which may be awarded by an appellate court.

## REQUEST FOR NOTICE OF DEFAULT AND FORECLOSURE UNDER SUPERIOR MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed and acknowledges receipt of pages 1 through 6 of this Mortgage.

## NOTICE TO BORROWER

Do not sign this Mortgage if it contains blank spaces. All spaces should be completed before you sign.

_____ (Seal)
ROBERT HAUGHTON                -Borrower
~~502 ROCHESTER LOOP~~
~~DAVENPORT, FL 33897~~
192 BUCKINGHAM RD, YONKERS, NY 10701

_____ (Seal)
DAISY LABORDE                  -Borrower
~~502 ROCHESTER LOOP~~
~~DAVENPORT, FL 33897~~
192 BUCKINGHAM RD, YONKERS,
NY 10701

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

Signed, sealed and delivered in the presence of:

_____
LESLIE WILSON

_____
TIFFANY CHRIST

State of Florida
County of _Polk_

The foregoing instrument was acknowledged before me this _27th_ day of _Sept 2005_ by
ROBERT HAUGHTON, ~~DAISY LABORDE~~
individually and as attorney in fact for Daisy Laborde
who is personally known to me or who has produced _Drivers License_
as identification.

_____   Notary Public
Notary Public State of Florida
Leslie Wilson
My Commission DD385381
Expires 01/21/2009

**FLORIDA SECOND MORTGAGE**

ITEM 4605L6 (0107) MFFL3117          (Page 6 of 6 pages)

GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

# EXHIBIT "A"

Lot 35, LAKE DAVENPORT ESTATES WEST PHASE ONE, according to map
or plat thereof as recorded in Plat Book 96, Pages 35 and 36,
of the Public Records of Polk County, Florida.

THE PROPERTY DESCRIBED HEREIN IS NOT THE HOMESTEAD PROPERTY OF
THE MORTGAGOR AS DEFIND BY ARTICLE X OF THE FLORIDA
CONSTITUTION.

# PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this      28th      day of September 2005      , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to NATIONPOINT A DIVISION OF NAT. CITY BANK OF IN

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

532 ROCHESTER LOOP
DAVENPORT, FL 33897

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in the Declaration of Covenants, Conditions, and Restrictions

(the "Declaration"). The Property is a part of a planned unit development known as

LAKE DAVENPORT ESTATES WEST

[Name of Planned Unit Development]

(the "PUD"). The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.** Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents. The "Constituent Documents" are the (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Property Insurance.** So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts (including deductible levels), for the periods, and against loss by fire, hazards included within the term "extended coverage," and any other hazards, including, but not limited to, earthquakes and floods, for which Lender requires insurance, then: (i) Lender waives the provision in Section 3 for the Periodic Payment to Lender of the yearly premium installments for property insurance on the Property; and (ii) Borrower's obligation under Section 5 to maintain property insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy.

What Lender requires as a condition of this waiver can change during the term of the loan.

Borrower shall give Lender prompt notice of any lapse in required property insurance coverage provided by the master or blanket policy.

MULTISTATE PUD RIDER—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3150 1/01

ITEM 1622L1 (0011)   MFCD2063      *(Page 1 of 2 pages)*      GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

In the event of a distribution of property insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

**C. Public Liability Insurance.** Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the Property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 11.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain; (ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in pages 1 and 2 of this PUD Rider.

| | |
|---|---|
| _____ (Seal) | _____ (Seal) |
| ROBERT HAUGHTON        -Borrower | DAISY LABORDE        -Borrower |
| _____ (Seal) | _____ (Seal) |
|                        -Borrower |                        -Borrower |
| _____ (Seal) | _____ (Seal) |
|                        -Borrower |                        -Borrower |

MULTISTATE PUD RIDER—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3150 1/01

ITEM 1622L2 (0011)  MFCD2063        (Page 2 of 2 pages)        GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

**BALLOON RIDER TO MORTGAGE, DEED OF TRUST OR SECURITY DEED**
NATIONPOINT

Date:  September 28, 2005

1. BORROWER(S): ROBERT HAUGHTON, DAISY LABORDE

Property Address: 532 ROCHESTER LOOP
DAVENPORT, FL  33897

2.  **DEFINED TERMS; RIDER A PART OF THE SECURITY INSTRUMENT.**  "Rider" means this Balloon Rider to Mortgage, Deed of Trust or Security Deed which is attached to, made a part of and amends and supplements the Mortgage, Deed of Trust or Security Deed ("Security Instrument") which Borrower(s) gave to NATIONPOINT  A DIVISION OF NAT. CITY  BANK OF IN                ("the Lender") and which is dated the same date as this Rider.  The Security Instrument secures the Note and Security Agreement ("Note") and covers the property described therein located at the address set forth above.  The term "the Lender" includes Lender's successors and assigns.  In the event there are any conflicts between this Rider and the Security Instrument or the Note, the provisions of the Rider will control.

3.  **BALLOON NOTE.**  The final payment due under the Note is larger than the previous monthly payments.  The final payment includes a substantial payment of principal.  The Note is commonly called a "balloon note."

4. **BALLOON NOTE AGREEMENT.**  Borrower(s) understand and agree as follows:

THIS LOAN IS PAYABLE IN FULL ON THE MATURITY DATE SET FORTH IN THE SECURITY INSTRUMENT.  THE BORROWER MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN, UNPAID INTEREST AND OTHER SUMS THEN DUE.

5. **SIGNATURES.**  BORROWER HAS READ AND AGREES TO ALL PROVISIONS OF THIS RIDER.

© 2004 National City Corporation

MFCD6049
FF0139L1

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 and 2 of this Balloon Rider.

ROBERT HAUGHTON
Type or print name                          (X)_____
                                                        Signature

DAISY LABORDE
Type or print name                          (X)_____
                                                        Signature

_____          X_____
Type or print name                                      Signature

_____          X_____
Type or print name                                      Signature

_____          X_____
Type or print name                                      Signature

_____          X_____
Type or print name                                      Signature

© 2004 National City Corporation

MFCD6049
FF0139L2

Prepared By/Record & Return To:
Karen Duddy
Home Loan Services, Inc.
150 Allegheny Center Mall- Loc. #23-531
PO Box1838
Pittsburgh, PA 15212

## Corporate Assignment of Mortgage

County of Polk State Florida

Effective Date: February 1, 2007

Assignor:      Nationpoint a Division of National City Bank of IN
                  150 Allegheny Center Mall
                  Pittsburgh Pa 15212

Assignee:      *PNC Bank, National Association, successor by merger to National City Bank*
                  150 Allegheny Center Mall
                  Pittsburgh, Pa. 15202

Executed by      Robert Haughton and Daisy Laborde as joint tenants with rights of survivorship

To:      Nationpoint a Division of National City Bank of IN

Mortgage dated September 28, 2005 the amount of $53,600.00 and recorded on October 12, 2005 in doc 2005248819 book 06438 page 1792-1802

Property Address: 532 Rochester Loop Davenport Florida 33897

Legal description:    See attached

Know All Men By These Presents that in consideration of the sum of Ten and No/100ths Dollars and other good valuable consideration, paid to the above Named assignor, the receipt and the sufficiency of which is hereby acknowledged the Said Assignor hereby assigns unto the above named Assignee, the said Mortgage having an original principal sum of $53,600.00 interest thereby, Together with all moneys now owing or that may hereafter become due or owing in Respect thereof, and the full benefit of all the powers and of all the covenants and Provisions therein contained, and the said Assignor hereby grants and conveys Unto the said Assignee, the Assignor's beneficial interest under the Mortgage.

To Have and To Hold the said Mortgage, and also the said property
Unto the said Assignee forever, subject to the terms contained in said Mortgage and Note.

Signed on this day: December 9, 2009 but Effective February 1, 2007

Witness_____
        Matthew Coffman

Witness_____
        Karalee Hirschfield

Nationpoint a Division of National City Bank of IN

By_____
    Bryan G Kusich
    Vice President of Home Loan Services Inc,
    Attorney in Fact for Nationpoint a Division of
    National City Bank of IN

State of: Pennsylvania
County of: Allegheny

On December 9, 2009, before the undersigned, Karen Duddy, a Notary Public in and for said County and State, on this day personally appeared, Bryan G Kusich, Vice President of Home Loan Services Inc, Attorney in Fact for Nationpoint a Division of National City Bank of IN known to be the person and officer whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

_____
Notary Public

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Karen Duddy, Notary Public
City of Pittsburgh, Allegheny County
My Commission Expires Aug. 21, 2011
Member, Pennsylvania Association of Notaries

# EXHIBIT "A"

Lot 35, LAKE DAVENPORT ESTATES WEST PHASE ONE, according to map
or plat thereof as recorded in Plat Book 96, Pages 35 and 36,
of the Public Records of Polk County, Florida.

THE PROPERTY DESCRIBED HEREIN IS NOT THE HOMESTEAD PROPERTY OF
THE MORTGAGOR AS DEFIND BY ARTICLE X OF THE FLORIDA
CONSTITUTION.